(Hamilton County Probate Court.)

## IN RE ESTATE OF HENRY WORTHINGTON, DECEASED, FOR REMOVAL OF EXECUTORS.

The policy of the law favors settlements, encourages compromises, and welcomes the solution of legal difficulties by amicable means, and when brothers and sisters, heirs and devisees, unite in an instrument whose sole purpose is an adjustment and settlement of all disputed matters, to the end that there may be a speedy termination of all questions in controversy, our courts have invariably adopted that plan as a desirable conclusion in the settlement of estates, and a party to such a contract of settlement, who at the time was fully aware of the condition of the estate, will not be heard afterwards to object to the contract.

### FERRIS, J.

This application is made under and by virtue of the provisions of sec. 6017, of the Rev. Stats., which provides, "The Probate Court may, at any time, remove any executor or administrator, he having twenty days notice thereof, for habitual drunkenness, gross neglect of duty, incompetency, fraudulent conduct, removal from the state, or that there are unsettled claims or demands existing between him and the estate, which, in the opinion of the court, may be the subject of controversy or litigation between him and the estate, or persons interested therein, or any other cause, which, in the opinion of such court, renders it for the interest of the estate that such executor or administrator be removed, and the other executor or administrator, if any there be, may proceed in discharging the trust, as if the executor or administrator so removed were dead, and if there be no other executor or administrator to discharge the trust, the court may commit the administration of the estate not already administered to some other person or persons in like manner, as if the executor or administrator so removed were dead."

Contention has been made that the court should order the removal of these executors, for the reason that there are unsettled claims and demands existing between them and the estate of which they are the executors, and further, generally, that their conduct in the administration of the estate has not been in accordance with the provisions of the statute.

The testimony taken at length in the case would justify the conclusion that the administration had no been had in all respects in accordance with the strict letter of the statute of the law regulating, directing and controlling the conduct of executors and administrators. But the evidence here adduced, makes it necessary for the court to examine carefully into the condition of the estate for the purpose of determining whether or not there has been a legal administration. For it appears that a full and complete settlement and agreement was entered into by and between all of the parties, endeavoring to close up and adjust all of the unsettled matters between the various parties in interest, known as the agreement of May 4, 1896, set forth as Exhibit 'B,' in the testimony.

The last will and testament of Henry Worthington, gave unusually broad powers to the trustees, and fully authorized them to exercise the widest possible latitude of discretion in the matter of the adjustment and settlement of all questions relating to that estate. For clause 14 of the will, says: "It is my will and I do hereby authorize and empower said George G., and J. Carroll Hamilton, as trustees, to manage and control the said residue and remainder of my estate which may come into their hands under the provisions of this my last will and testament, as fully and completely as if they were the owners absolutely and in fee simple, with full power during the life of said trust, to sell, convey, exchange, rent, lease, build houses, etc., and all and everything else which in their opinion may be proper to do for the benefit of said estate, and shall make a full and complete settlement of all their transactions as to the said estate, to the court having jurisdiction, at least once in a year."

The exceptor, a son of the deceased, besides being a legatee under clause 4 of the will, is also a large creditor of the estate, evidenced by a promissory note against which no contention is made, and it is a valid indebtedness of the estate.

For the purposes of adjusting said claim, an agreement was entered into between Henry S. Worthington, the executors of the estate, and as individuals, and all of the legatees and distributees of said estate, by which it was provided in the ninth clause of said agreement, as follows: "The executors are to administer the estate so as to pay the debts of the estate as soon as may be practicable. Among the debts is a liability to H. S. Worthington, aggregating about $70,000. In payment of $8,500 of this, he is to be deeded the Heno farm, subject to the lease thereon, but the executors are to retain therein, a right to redeem same by payment to him of $8,500 within five years, and in payment of the balance of said indebtedness, he is to be deeded the Fern bank property, in Ohio, which is not included in the lease from Kinkead, and is to immediately execute to the executors, a lease upon it for a term of five years, at a rental of 6 per cent. per annum on that amount, with privilege of purchase by payment to him

of the same amount of said balance and unpaid rentals then due, containing the same privileges and covenants, as shown in the lease from Kinkead to Short.

"When all the debts and liabilities now remaining against the estate of H. Worthington, have been paid (the Gaff lease, the H. S. Worthington debt herein named, and the Casey liability not being computed as debts for the purpose of this paragraph), the conveyance of the Lucas county property, above provided for, is to be made to Lily W. Stuart or her assigns, as hereinbefore stated.

"When all the debts and liabilities against the estate have been paid, except the redemption of the Gaff, and H. S. Worthington leases, the remainder of the estate of H. Worthington (including the estates of Maria Worthington and Mattie Worthington), after deducting $10,000.00 to Kearns Worthington, and the Tennessee land and Item 11, herein, is to be divided between Lily W. Stuart and Roberta Hamilton, one-half each, except as provided in Item 10; and if the property then to be divided is on hand in kind, to be divided at the curator's valuation thereof. But it is expressly understood, that if the Casey liability has not been adjusted or finally determined by the time the other liabilities of the estate are paid as herein provided for, the partition contemplated and provided for in this paragraph. is not to be postponed. It is expressly understood and agreed, that nothing is to be paid or conveyed to Lily W. Stuart, under Items 7 and 9 hereof, until she shall exhibit and file with the executors, George C. and J. C. Hamilton, an acknowledgment of satisfaction from S. Worthington of the price, to-wit, $50,000, for which he has, and hereby agrees to sell his interest as herein recited, to Lily W. Stuart, or they shall otherwise be satisfied thereof, but said executors are to hold the same in trust to secure said amount to said H. S. Worthington."

It was further provided, in sec. 20, of said agreement, as follows: "This agreement and compromise of settlement is not to be effectual until it shall, in an appropriate proceeding in the Kenton Circuit Court, have been ratified and authorized by a judgment in that court, all parties in interest being parties thereto, said proceedings to be instituted immediately upon the execution hereof by the parties hereto, and prosecuted vigorously to a conclusion; the costs of same to be paid by the estate, but the attorneys by the individuals they represent. An appeal to the Court of Appeals shall be taken at once, and the case advanced and affirmed as soon as may be practicable."

Which agreement, being duly signed by all of the parties in interest, was signed by H. S. Worthington, with this expression: "I agree to and accept all the terms and conditions of the above agreement and compromise, and will do and perform all things required of me.

(Signed) H. S. Worthington. May 4th, 1896."

The testimony shows that the executors proceeded, in compliance with the above agreement, to close up the estate in accordance therewith, and no creditor is here objecting, except H. S. Worthington, who now urges that this contract is ineffectual in the settlement of the estate, for the reason that no title can be given to him that is merchantable and legal, because all of the debts due and owing from the estate of Henry Worthington, deceased, are a lien upon the property until paid; that no title of the character in contemplation at the time of the making of the contract, could be made to him until a full and final settlement of the estate as had.

It is in testimony, that the executors of the estate proceeded under the advice of counsel and under the authority given to them by the courts of Kentucky, having original jurisdiction in the settlement of the estate, to close up this estate in accordance with this contract of agreement, under which contract it is claimed by them, that, so far as H. S. Worthington is concerned, he can not be heard to complain, for the reason that the settlements made, the contracts entered into by the executors, and their proceedings have been entirely in consonance with, and in full performance of the agreement of May 4th, 1896, and it is not contended by them, that in view of this agreement, they are to close the estate under the Ohio law in a statutory way.

It is admitted that, by virtue of the power vested in and conferred upon them by the terms of the last will and testament of Henry Worthington, deceased, they did proceed to contract with certain corporations for the purpose of raising a sufficient amount of money to pay off and to discharge all of the indebtedness due and owing to all of the Ohio creditors, who were by them paid in full of all account.

The testimony warrants the conclusion that there is no outstanding indebtedness at this time. Demand is made that the acknowledged claim of H. S. Worthington should be paid as other indebtedness has been paid, and here the main contention has arisen to be disposed of by this court, as to whether the contract that was entered into, as herein set forth, is legal and of a binding nature, and sufficient in law to justify the line of action pursued by these executors. The will of Henry Worthington was never intended by this agreement to be abrogated or set aside. This agreement of May 4th, was had specially with reference thereto, and, unless the powers delegated to the trustees and executors

would fully warrant the entering into such an agreement, the contract must fail. But, if it shall be found that the powers conferred, are of sufficient breadth to cover a transaction of this kind, much light would be shed upon the transaction by an examination of the will itself.

The will, as a whole, is not ambiguous nor difficult to understand. The courts of Kentucky, from the lowest to the highest court, found it to be the valid last will and testament of Henry Worthington, and also by decree affirmed the contract of settlement of May 4th, 1896. The will authorizes and empowers the trustees "to manage and control the estate under the provisions of this my last will and testament, as fully and completely as if they were owners absolutely and in fee simple, with full power during the life of said trust, to sell, convey, exchange, rent, lease, build houses, etc.," and then, as if to cover a case where discretion was to be exercised, the testator adds: "And all and everything else which in their opinion may be proper to be for the benefit of said estate, and shall make a full and complete settlement," etc. It was under the supposed authority that was given here, that the agreement of May 4th, 1896, was entered into, and while such a contract would not be binding upon one not a party to it, it is urged, that the authority to make such an agreement—no one complaining but a party to it—is full and ample in any proper construction of this clause of the will.

This, the courts of Kentucky, after fullest consideration, determined was the law of the land, and it is urged that, if there were no other reason for the denial of the present motion, it would be found in that fact alone, namely, that a court of original jurisdiction in an action at law between the same parties, over the same subject matter, concluded that the contract of May 4th, was in full force and effect, and binding upon all of the parties thereto, and that it was made by and between persons, who, in their individual and representative capacities, were by the law, fully authorized to enter into, and carry into effect, the agreement of May 4th, 1896.

But, irrespective of the claim of res adjudicata, counsel for the estate of Henry Worthington, contend that it was for the best interests of the estate that a settlement should be had in accordance with the facts existing at that time, to the end that the object of all administration of estates everywhere, and particularly of this estate, should reach a solution at an early date, and, for that reason, it was deemed best by them in the exercise of the discretion given to them under the will and sanctioned by the laws, to proceed forthwith to the payment of indebtedness, and prepare at the earliest possible date fo a proper distribution of the effects held by them in trust both for the creditors of the estate, as well

as for the distributees. To that end it was possible by the conveyance of certain lands mentioned in the agreement to H. S. Worthington, and the payment of the indebtedness due to creditors of the estate, to effect a satisfctory adjustment of all outstanding matters.

If the agreement were void, he plain course to have been pursued by the executors, was an immediate sale of the most available assets and a distribution of the same under the orders of this court. The executors say, as reflecting upon their discretion, as exercised in the management of this estate, that the agreement set forth was most advisable in this, to-wit: That it gave to them an opportunity to sell the property at such times and in such manner as circumstances might indicate and direct without serious loss; that if forced to sale within the time provided by law, the property would have been sacrificed and great loss consequent upon such action; that the times were not propitious for an advantageous sale, and that, acting under the best counsel possible, it seemed to be a wise and discreet plan to convey to their largest creditor, at proper valuations, a sufficient amount of property to satisfy his just demands against the estate. And, as a further reason, it is made to appear that much of the litigation arose on account of this claimant. It was proposed and thought, that by the arrangement in question, there would be an end also of this.

By this agreement, also, a way was prepared by which all of the creditors of the estate could receive their money at once and thus end the possibility of having the estate subjected to sale at a time when there was no market for the property. To this end it has appeared, that the executors have also jeopardized their own personal estates for the time being, to assist in discharging the indebtedness of the estate of Henry Worthington, and while it is true that members of their families are the largest beneficiaries, yet, the argument loses none of its force when it is shown that the creditors of the estate have been benefited by the transaction. There are no creditors, as the court has said, complaining of the transaction, except H. S. Worthington, a party to the contract, and unless the argument of his counsel, that the contract is illegal, should be found effectual, the contract ought to stand as the basis of settlement of the estate. The ground for its recision is, that the executors were without power to enter into it, and that in legal contemplation it was impossible of execution. Insuperable difficulties, if true.

That H. S. Worthington was a creditor is not denied. That he had a valid claim against the estate at the time of the entering into the contract is unquestioned. That it was the legal duty of the executors, aside from the contract, to appropriate assets to the payment of this indebtedness, is equally true, and, if the personal assets were insufficient, then to subject a sufficient amount

of the realty to the payment of said indebtedness.

This could have been done by appraisement and sale, either public or private, and the estate being, as shown by the testimony, solvent, there could have been no objection in law to a private sale to H. S. Worthington, the consideration of which being the cancellation and complete liquidation of his claim against the estate; or, no rights of creditors intervening, an agreement could have been entered into between the executors of the estate and the claimant, by which his indebtedness could have been postponed as an entirety, or paid as an entirety either in moneys, or equivalents.

The contract, as the court understands it from the testimony, was made with the fullest understanding by all of the parties, particularly H. S. Worthington. of the condition of the estate. He was familiar with its assets and liabilities. He was familiar with the fact at the time of the indebtedness that was outstanding. He knew, as is shown by the contract, that there were other debts to be paid, for the particular clause which refers to his interest, (Item 6, says , that the executors are to administer the estate so as to pay the debts of the estate as soon as may be practicable. How, then, could he be heard to complain at this time that no merchantable title could be given as long as the indebtedness was due and unpaid?

It is here to be admitted, that the claims of creditors are first and prior as against heirs and distributees, but it is also true, that, having provided for payment for the liquidation of all indebtedness, the argument fails for want of application. The executors have tendered to H. S. Worthington, deeds in compliance with the contract, and stand ready to fulfil all and singular, the obligations called for by the agreement. H. S. Worthington can do no less. He stands before this court calling for the strict performance of a statutor duty on the part of the executors, the performance of which has been prevented by his own act. Rights have ensued as the result of these contract relations. Engagements have been entered upon by third persons, who, it is true, are charged with the knowledge of the law, but who, in good faith, on the strength of this contract, have loaned money to the estate to be used by the executors in the payment of indebtedness, and whose rights are reciprocal, and the performance of which agreements must be carried out by the officers of this court in good faith; and, for that reason, no claims of equity can be heard when the voice of the law is as distinct as could be heard, speaking through a contract that appears to the court plain and unavoidable.

The Lucas county transaction furnishes illustration of the principles above referred to, and, while the doctrine of subrogation possibly might apply to the insurance companies that have loaned money to pay off the creditors of the estate, yet it does not seem to the court, a proper case for the application of that doctrine.

As the court has heretofore remarked, an entirely different course would have been pursued, were it not for the contract of May 4th, 1896. That these officers, whose acts are now called in question, fully intended to administer the estate in accordance with the statutes of Ohio when appointed, and that statements to that effect were made in open court, there is no doubt. That the court ordered the parties to proceed in accordance with the statute to close up the estate at the earliest possible date, to the end that the Ohio creditors should be paid with the Ohio assets, there can be no doubt, and, in the absence of such an agreement as herein made, there can scarcely be any excuse, and certainly no reason, for a failure to close the estate in accordance with law.

But, in the presence of the agreement upon which counsel rely, the court is of the opinion that the contract is binding, and is to be recognized as one of the methods of discharging an indebtedness. The policy of the law favors settlements, encourages compromises, and welcomes the solution of legal difficulties by amicable means, and when brothers and sisters, heirs and devisees, unite in an instrument whose sole purpose is an adjustment and settlement of all disputed matters, to the end that there may be a speedy termination of all questions in controversy, our courts have invariably adopted that plan as a desirable conclusion in the settlement of estates.